IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 1:22-cv-01847-SKC

GABRIEL ARMIJO;

    Plaintiff,

v.

SHERIFF RICHARD REIGENBORN, individually and in his official capacity;
MATTHEW TRAN, individually;
SCOTT STROLE, individually;
JOSEPH BONDER, individually;

    Defendants.

---

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (DKT. 46)

---

On June 27, 2021, Adams County Sheriff's Deputies responded to Plaintiff Gabriel Armijo's residence based on a 911 call. Dkt. 51 at Fact 1. Defendant Deputy Tran was the first officer on scene; he understood he was responding to a domestic disturbance with reports of a car accident and a large group of people gathered in the street yelling at each other. *Id.* at Fact 7.

What occurred before officers arrived began as an argument between Plaintiff and his common law wife regarding her going to a bar and Plaintiff later having to pick her up. The argument grew to include around six additional family members and others. In relevant part, the argument included Plaintiff destroying the garden he

1

and his wife had built, toppling tables and chairs, pulling down the awning, and turning over planters and potted plants. *Id.* at Fact 17. He then tried to leave the residence in his vehicle; however, the argument escalated and now included several other parties. *Id.* at Fact 18. While trying to drive away, Plaintiff: hit one person with the door of his vehicle such that the door would not close, hit a wooden fence, got a piece of lumber stuck in the motor, realized the truck was undriveable because it would not make it even three miles, sideswiped a parked vehicle, and bent a wheel on the car. *Id.* at Fact 19.

It was dark when Deputy Tran arrived on scene, and the scene was hectic: he saw evidence of some sort of auto accident, he saw a group of six or seven people screaming and yelling, and he made contact with the individual they were yelling at who was later identified as Plaintiff. *Id.* at Fact 8. Deputy Tran instructed Plaintiff to sit on the curb. *Id.* at Fact 9. Plaintiff, who had previously had surgery on his right shoulder and typically wore a sling, was not wearing a sling when he interacted with Deputy Tran, and there were no visible indicators of his shoulder surgery because he was wearing a t-shirt. *Id.* at Facts 4-6.

As Deputy Tran was speaking with Plaintiff to investigate the matter, Plaintiff's wife became agitated to the point of shouting at Deputy Tran because she believed he was preparing to handcuff Plaintiff behind his back. *Id.* at Fact 10. That's around when Defendant Deputy Strole (and Non-party Deputy Durante) arrived on scene. *Id.* at Fact 11. Deputy Strole was concerned with dealing with Plaintiff's wife

because she was yelling and screaming while Deputy Tran was trying to speak to Plaintiff. *Id.* at Fact 21. Deputies ultimately detained the wife in the back of a police car. *Id.* at Fact 20.

Deputy Strole then returned to Deputy Tran and helped him place Plaintiff in custody, which included putting him in handcuffs. *Id.* at Fact 23. Deputy Tran had determined that Plaintiff was the aggressor in a domestic disturbance that involved various visible property damage. *Id.* at Fact 22. At the time of the handcuffing, Plaintiff told Deputy Tran that he had a recent shoulder surgery or shoulder injury and that he was not able to be handcuffed in the back. *Id.* at Facts 25, 50. Deputy Strole also heard and understood that Plaintiff had prior shoulder surgery. *Id.* at Facts 50-52.

Deputy Tran told Plaintiff he could not handcuff him in the front due to safety concerns; so instead, and to give Plaintiff some relief and accommodate his shoulder, Deputy Tran used two sets of handcuffs ("double cuffed"). *Id.* at Fact 26; Dkt. 46-2 at p.30, ll.16-25, p.64, ll.18-20. While pulling Plaintiff's right arm back as Deputy Tran applied the handcuffs, Deputy Strole saw Plaintiff wince in pain, so he returned Plaintiff's arm back down to his side and held it there while Deputy Tran applied the handcuffs. *Id.* at Fact 52; Dkt. 48-7 pp.33, ll.1-16. As he was handcuffing Plaintiff, Deputy Tran asked him if he needed medical attention, and Plaintiff said "no." *Id.* at Fact 31; Dkt. 46-2 at p.47, ll.22-25, p.48, ll.1-13. The Deputies placed Plaintiff under arrest and put him in the back of Deputy Tran's patrol car. *Id.* at Fact 24.

Plaintiff sat handcuffed in the back of the patrol car for approximately 30 minutes while Deputy Tran continued his investigation. *Id.* at Fact 67. Deputy Tran then drove Plaintiff to the substation, which was about a 15-minute drive. *Id.* at Fact 32. After they arrived at the substation, Deputy Tran put Plaintiff in a holding cell and removed the handcuffs. *Id.* at Fact 34.

Plaintiff claims he experienced severe pain in his right shoulder, both when Deputies Tran and Strole pulled his arms back to be handcuffed and the entire time he was handcuffed behind his back. *Id.* at Facts 46, 47. Even still, he did not request medical attention on scene and did not complain about his shoulder during the 15-minute commute from the scene to the substation. *Id.* at Facts 29, 33. Deputy Tran did not believe Plaintiff's shoulder injury was extensive because Plaintiff did not complain, yell, or scream about his shoulder. *Id.* at Facts 42, 55; Dkt. 48-5 at pp.42, ll. 18-25.

Plaintiff's next transport was from the substation to the jail, which fell to Defendant Deputy Bonder to do. *Id.* at Fact 35. Plaintiff told Deputy Bonder he had a shoulder injury or shoulder surgery and that he did not want to be handcuffed behind his back. *Id.* at Fact 36. As a partial accommodation to Plaintiff's request, Deputy Bonder double cuffed Plaintiff behind his back. *Id.* Deputy Bonder did not see any outward indicators that Plaintiff was injured or in pain while he handcuffed him. *Id.* at Fact 38. The duration of the trip from the substation to the jail was approximately 20 minutes. *Id.* at Fact 39.

4

Though he never consented to being handcuffed behind his back at any time, Plaintiff was calm, cooperative, and respectful when interacting with the Deputies. *Id.* at Facts 42, 54. Although concerned for the safety of others on the scene, Deputy Tran did not believe Plaintiff was a threat to him at any time. *Id.* at Fact 41. Plaintiff was ultimately charged with a felony offense. *Id.* at Fact 40.

It is undisputed that Plaintiff's shoulder was healing as expected after his surgery and before the Deputies handcuffed him. *Id.* at Fact 44. Though causation is disputed, it is undisputed that images from an MRI taken "just days" after Plaintiff's arrest showed his prior rotator cuff repair had been re-torn and progressed significantly in both size and retraction. Dkt. 48-4 at p.1.

## APPLICABLE PROCEDURAL HISTORY

This action is before the Court on the parties' consent under 28 U.S.C. § 636(c). The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. Plaintiff brings the following two claims in his Second Amended Complaint, Dkt. 42:

| CLAIM NUMBER | CLAIM TYPE | AGAINST |
|---|---|---|
| First Claim for Relief | Colo. Rev. Stat. § 13-21-131 (civil action for deprivation of rights) | Deputy Tran<br>Deputy Strole<br>Deputy Bonder |
| Second Claim for Relief | 42 U.S.C. § 1983 (Fourth Amendment excessive force & Fourteenth Amendment due process/deliberate indifference) | All Defendants, to include Sherrif Reigenborn in his official and individual capacities |

5

Following a period of discovery, Defendants have moved for summary judgment on all claims. Their motion is now before the Court. Dkt. 46. The Court has carefully considered all briefing on the motion (Dkts. 46, 48, and 50), the undisputed material facts in the light most favorable to Plaintiff, and applicable law. No hearing is necessary.

Because the undisputed material facts show no reasonable jury could conclude these Defendants' conduct violated a constitutional right, Defendants are entitled to judgment as a matter of law on Plaintiff's federal law claims, and the Defendants in their individual capacities are further entitled to qualified immunity. And because Plaintiff's sole remaining claim arises under Colorado law, the Court declines to exercise supplemental jurisdiction over the state law claim, and therefore, dismisses the claim without prejudice. 28 U.S.C. § 1367(c)(3).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)).

Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury, or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 248-49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132 (10th Cir. 2000). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson,* 477 U.S. at 248.

## ANALYSIS

1. **Qualified Immunity**

Plaintiff sues each Defendant under his Second Claim for Relief (Section 1983) in their individual capacities. He has two theories of liability: (1) excessive force and (2) deliberate indifference to a serious medical need. Defendants argue they are entitled to summary judgment based on qualified immunity.

Qualified immunity shields individual defendants in Section 1983 actions unless their conduct was unreasonable based on clearly established law. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Id.* (quotation omitted). The court has discretion to consider these prongs in any order. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

7

Whether defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

### a. Excessive Force Claim

Plaintiff does not argue he should not have been arrested, he should not have been restrained, or that the use of handcuffs itself violated his constitutional rights. Dkt. 48 at p.5. His theory of the case is the "manner, circumstances, and duration of handcuffing . . . amounted to excessive force, resulting in serious injury." *Id.* Defendants Tran, Strole and Bonder argue they are entitled to qualified immunity on this claim because the undisputed material facts show any constitutional right of Plaintiff that was violated (assuming a violation) was not clearly established at the time of these events. The Court, however, first considers whether the undisputed material facts show these Defendants violated a federal constitutional right.

### i. Violation of a Federal Constitutional Right

Claims that law enforcement officers used excessive force during an arrest are analyzed under the Fourth Amendment's reasonableness test, which "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Cortez v. McCauley*, 478 F.3d 1108, 1125 (10th Cir. 2007) (quotation omitted). The reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene; the question is whether the officer's actions are objectively reasonable considering the facts and circumstances confronting the

8

officer. *Id.* When an officer moves for qualified immunity on an excessive force claim, the plaintiff must establish that the force used was impermissible and that an objectively reasonable officer could not have thought the force constitutionally permissible. *Id.* at 1128.

Construing the evidence in the light most favorable to Plaintiff, the undisputed material facts do not show Defendants violated a federal constitutional right. Defendants were dispatched on a "domestic disturbance" with reports of a car accident and a large group of people in the street yelling at each other. Dkt. 51 at Fact 7. The scene was hectic when Deputy Tran arrived: he saw evidence of an auto accident and a group of six or seven people screaming and yelling, and he ultimately determined to arrest Plaintiff as the aggressor in a domestic disturbance that involved various visible property damage. *Id.* at Facts 8, 22; *see Graham v. Connor*, 490 U.S. 386, 396 (1989) (the court considers the severity of the crime at issue when determining whether force used was reasonable). Despite determining he had been the aggressor in a domestic disturbance, Deputy Tran noted that Plaintiff was cooperative and calm when dealing with law enforcement, did not resist arrest, and Deputy Tran did not perceive him as a threat. Dkt. 51 at Facts 41, 42; *Graham*, 490 U.S. at 396 (the court considers whether the suspect poses an immediate threat and whether he is actively resisting or evading arrest).

There is no evidence the Deputies were physically violent or aggressive with Plaintiff when handcuffing him or at any time. Indeed, the purpose of the double-

9

handcuffs was to accommodate what Plaintiff reported about an issue with his shoulder, and Deputy Strole further manipulated Plaintiff's arm back to his side during the first handcuffing to accommodate Plaintiff's apparent pain when his arm was brought back too far. These undisputed material facts show a normal, lawful arrest where Plaintiff was double handcuffed and placed in the back of a patrol car. Neither his shoulder injury nor his insistence on being handcuffed in the front, in and of themselves, morphed these officers' lawful force into excessive force. *See, e.g., Rodriguez v. Farrell*, 280 F.3d 1341, 1353 (11th Cir. 2002) ("What would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time.").

And the time Plaintiff spent double cuffed was not unreasonable—he was in handcuffs for a total of 45 minutes before Deputy Tran removed them after they arrived at the substation, and he was again in handcuffs for another 20 minutes when Deputy Bonder transported him to the jail. Dkt. 51 at Facts 32, 39, 67. It is notable that Plaintiff did not complain to Defendants about any pain in his shoulder or the need for medical attention the entire time he was handcuffed and transported first to the substation and then the jail. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354–55 (2001) (a normal lawful custodial arrest where one is handcuffed, placed in a patrol car, and taken to the police station is not violative of the Fourth Amendment); *Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long

10

recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). On these undisputed material facts, Plaintiff has failed to establish the Deputies violated his constitutional rights by double-handcuffing him behind his back, entitling the Deputies to qualified immunity and judgment as a matter of law.

### ii. Clearly Established Law

To be sure, even assuming they had violated his constitutional rights, the Court agrees with Defendants that Plaintiff has failed to show the law was clearly established. Plaintiff has not adduced Tenth Circuit or Supreme Court authority clearly establishing that an officer violates the Fourth Amendment by double-cuffing an arrestee behind his back as an accommodation to the arrestee's shoulder injury or recovery from shoulder surgery, even when the double-cuffing causes further injury to that shoulder.

The Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021). This means the law cannot merely be *implicated* by applicable precedent; instead, "the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (cleaned up; citation omitted); *see also Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–6 (2021) (noting Supreme Court precedent does not require a case directly on point but does require a case that places the constitutional question beyond debate; the inquiry is in the

11

specific context of the case and not general propositions). This level of specificity is particularly important in Fourth Amendment cases where it is "'sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Bond*, 595 U.S. at 12-13 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015); *City of Escondido, Cal. v. Emmons*, 586 U.S. ---, 139 S. Ct. 500, 503 (2019) ("Under our cases, the clearly established right must be defined with specificity. . . . That is particularly important in excessive force cases[.]" (cleaned up; citation omitted)).

The cases Plaintiff relies on[1] are either too factually dissimilar to this one, they state rules that are too general to stand as clearly established propositions, they state propositions of law not applicable here, or all the above. Though it has no precedential value, *Marble v. Hovinga*, No. 1:19-CV-00064-HCN, 2023 WL 2586225, at *1-9 (D. Utah Mar. 21, 2023), has eerily similar facts. *See Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1306 (10th Cir. 2021) ("District court cases lack the precedential weight necessary to clearly establish the law for qualified immunity purposes."). The *Marble* Court considered many of the same cases Plaintiff cites in his brief, and concluded the plaintiff there failed to show a clearly established right to not be double-cuffed behind his back despite a pre-existing shoulder injury. The Court finds the analysis in *Marble* persuasive and applicable here and adopts the *Marble* Court's reasoning.

---

[1] *Mglej v. Gardner*, 974 F.3d 1151 (10th Cir. 2020); *Fisher v. City of Las Cruces*, 584 F.3d 888 (10th Cir. 2009); *Vondrak v. City of Las Cruces*, 535 F.3d 1198 (10th Cir. 2008); and *Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007).

*See Marble*, 2023 WL 2586225, at *4-7. Plaintiff has failed to show Deputy Tran's, Strole's, or Bonder's conduct violated clearly established law.

### iii. Sheriff Reigenborn

The Court also finds Defendant Sheriff Reigenborn is also entitled to qualified immunity. There is no evidence the Sheriff was personally involved in these events—he was not on scene at Plaintiffs residence and he did not personally participate in handcuffing, arresting, or transporting Plaintiff to the substation or jail. *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim."). He too is entitled to qualified immunity—there is no evidence the Sheriff personally engaged in conduct which violated Plaintiff's constitutional rights.

### b. Claim for Deliberate Indifference to a Serious Medical Need

Defendants argue they are also entitled to qualified immunity on Plaintiff's deliberate indifference claim, which is vaguely pleaded in the Second Amended Complaint. Plaintiff makes no real argument in support of this claim. He defends the claim in a single sentence in his responsive pleading, stating only that "[t]he failure to provide medical care for hours after inflicting serious and highly foreseeable injury constituted deliberate indifference to a serious medical need." Dkt. 48 at p.5.

Because he was a pretrial detainee when in custody, the Fourteenth Amendment applies to Plaintiff's deliberate indifference claim. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317 (10th Cir. 2002) (applying Fourteenth Amendment

deliberate indifference analysis to arrestee); *see also Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) ("Under the Fourteenth Amendment due process clause, 'pretrial detainees are . . . entitled to the degree of protection against denial of medical attention which applies to convicted inmates' under the Eighth Amendment.") (quoting *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir.1985)). The test for deliberate indifference has both objective and subjective components. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).

First, the plaintiff must show that, objectively, the harm complained of is "sufficiently serious" to merit constitutional protection. *Id.* (citation omitted). The Court assumes the undisputed material facts support this objective piece.

Second, the plaintiff must establish the defendants were subjectively aware of the substantial risk to the plaintiff's health or safety and that they acted in purposeful disregard of that risk. *Martinez*, 563 F.3d 1082, 1089 (10th Cir. 2009). In the Tenth Circuit, a plaintiff must show a defendant "disregard[ed] the specific risk of harm claimed by the prisoner, not a more general risk." *Whiteman v. El Paso Crim. Just. Ctr.*, No.10-cv-02430-WYD-KLM, 2011 WL 2610202, at *4 (D. Colo. July 1, 2011).

The evidence is undisputed that while Deputies Tran and Strole knew Plaintiff had an issue with his shoulder when they handcuffed him, neither knew the extent of the issue and the condition of his shoulder was not visible to them. Dkt. 51 at Facts 4-6, 25, 50-52. Even still, Deputy Tran chose to use two sets of handcuffs specifically to accommodate Plaintiff's shoulder and to allow for handcuffing him in the back for

14

safety reasons and not out of spite. *Id.* at Fact 26; Dkt. 46-2 at p.30, ll.16-25, p.64, ll.18-20. During handcuffing, in response to having seen Plaintiff wince in pain while pulling Plaintiff's right arm back, Deputy Strole moved Plaintiff's arm back down to Plaintiff's side and held it there while Deputy Tran applied the handcuffs. *Id.* at Fact 31; Dkt. 46-2 at p.47 ll.22-25, p.48 ll.1-13. As he was handcuffing Plaintiff, Deputy Tran asked Plaintiff if he needed medical attention, and Plaintiff said "no." *Id.* at Fact 31; Dkt. 46-2 at p.47 ll.22-25, p.48 ll.1-13.

Considering these undisputed material facts, no reasonable jury could find in favor of Plaintiff on the subjective component of his deliberate indifference claim. *Cf. Martinez*, 563 F.3d at 1088 ("The Supreme Court cautioned that 'an inadvertent failure to provide adequate medical care' does not rise to a constitutional violation.") (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). These facts show the Deputies attempted to accommodate Plaintiff's shoulder. And since Plaintiff refused medical attention when getting handcuffed and never complained about shoulder pain when wearing the handcuffs or while being transported, the Deputies had no reason to believe Plaintiff needed medical attention. These undisputed material facts do not support the finding of a constitutional violation.

The Court reaches the same conclusion concerning Deputy Bonder and Sheriff Reigenborn—considering the undisputed material facts, no reasonable jury could find in favor of Plaintiff on the subjective component of his deliberate indifference claim concerning these two Defendants.

15

Defendants are thus entitled to qualified immunity and judgment as a matter of law.

**2.      Municipal Liability**

Plaintiff also sues Sheriff Reigenborn in his official capacity. More is required in an official-capacity action because a governmental entity is liable under Section 1983 only when the entity itself is a "moving force" behind a deprivation of constitutional rights. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted). An official-capacity suit requires proof that the entity's "policy or custom" caused the violation of federal law. *Id.* (citation omitted). Thus, under *Monell*, a governmental entity may not be sued under Section 1983 for its employee's constitutional violations unless a plaintiff shows a governmental policy or custom was the moving force behind the violation. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).

This Court, having determined the Deputies committed no constitutional violations, necessarily means the Sheriff, in his official capacity, is also entitled to judgment as a matter of law on Plaintiff's official-capacity claim under *Monell*. "It is well established . . . that a municipality cannot be held liable under section 1983 for the acts of an employee if [the] employee committed no constitutional violation." *Myers v. Oklahoma Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).

**2.     Plaintiff's State Law Claim under Colo. Rev. Stat. § 13-21-131**

"Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). Plaintiff's remaining claim arises under a Colorado statute, Colo. Rev. Stat. § 13-21-131. There is not a compelling reason to maintain jurisdiction over the state law claim in light of this Court finding Defendants are entitled to summary judgment on the claims arising under federal law. The Court declines to exercise jurisdiction over the remaining state law claim and dismisses the claim on that basis.[2] 28 U.S.C. § 1367(c)(3).

*     *     *

For the reasons shared above, the Court GRANTS the motion for summary judgment, Dkt. 46, and ORDERS the following:

1. The Clerk of Court shall enter judgment in favor of Defendants and against Plaintiff on Plaintiff's Second Claim for Relief;

2. Plaintiff's First Claim for Relief (state law claim) is DISMISSED, WITHOUT PREJUDICE, under 28 U.S.C. § 1367(c)(3);

3. Each party will pay their own attorney fees and costs; and,

4. The Clerk of Court shall terminate this action.

---

[2] Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim, the Court need not address the merits of Defendants' arguments concerning that claim.

DATED: December 13, 2023

                                       BY THE COURT:

                                       S. Kato Crews
                                       United States Magistrate Judge

18